**FILED**

Jul 11 2014, 6:26 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court



# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**RUTH JOHNSON**
Marion County Public Defender
Indianapolis, Indiana

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DRAKKAR R. WILLIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1310-CR-854 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Clark Rogers, Judge
Cause No. 49F25-1301-CM-4568

**July 11, 2014**

**OPINION- FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Drakkar R. Willis challenges the sufficiency of the evidence supporting his conviction for class A misdemeanor criminal trespass. We affirm.

## Facts and Procedural History

The facts most favorable to the trial court's judgment are that on the night of January 18, 2013, Officer Christopher Clouse of the Indianapolis Metropolitan Police Department was dispatched to the Watkins Family Recreation Center when a security alarm was activated. While driving to the scene, Officer Clouse received an additional report from the alarm company which reported voices and noises inside the Center. Once he arrived at the scene, he spoke to Officer LaRussa, who had chased a suspect eastbound across the street from the Center. Officer LaRussa told Officer Clouse that there was a vehicle parked behind the building with its doors and trunk open. As Officer Clouse arrived at the west side of the building, he did not see anyone exit the building but "observed a black male running westbound from the business" about a hundred yards away. Tr. at 5.[1] Officer Clouse radioed the man's description to other officers. Officer Michael Faulk noticed a man who matched the description running westbound and apprehended him. Officer Clouse drove to that location and identified Willis as the man he had seen running away from the Center. Officer Clouse entered the Center and noticed that a vending machine had been broken into.

---

[1] At trial, the prosecutor repeatedly asked Officer Clouse about the person he saw "running out of the back of the building," even though the officer never uttered those words. Tr. at 5. On cross-examination, Officer Clouse stated that he "didn't see [Willis] come from the building." *Id*. at 8.

The State charged Willis with class A misdemeanor criminal trespass. At trial, Cheryl Newsom, a park supervisor, testified that no one had permission to be in the Center on the night of the incident. The trial court found Willis guilty as charged.

**Discussion and Decision**

On appeal, Willis contends that the State failed to present sufficient evidence that he committed criminal trespass. In reviewing a challenge to the sufficiency of the evidence, "we neither reweigh the evidence nor assess witness credibility, and will focus on the evidence most favorable to the [judgment] together with the reasonable inferences that may be drawn therefrom. We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt." *Cooper v. State*, 940 N.E.2d 1210, 1213 (Ind. Ct. App. 2011) (citation omitted), *trans. denied.* A conviction may be based on circumstantial evidence and the reasonable inferences that can be drawn from that evidence. *Peters v. State*, 959 N.E.2d 347, 355 (Ind. Ct. App. 2011). Contrary to Willis's assertion, on appeal, the circumstantial evidence need not overcome every reasonable hypothesis of innocence. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

Indiana Code Section 35-43-2-2(a)(4) states that a person who "knowingly or intentionally interferes with the possession or use of the property of another person without the person's consent" commits class A misdemeanor trespass. Willis notes that no one saw him inside the Center or exiting the Center that night. Although this is true, based on recent Indiana Supreme Court precedent, we must conclude that the minimal circumstantial

evidence favorable to the judgment was sufficient for a reasonable factfinder to determine beyond a reasonable doubt that Willis was inside the Center that night.

In *Meehan v. State*, 7 N.E.3d 255 (Ind. 2014), the Indiana Supreme Court affirmed a burglary conviction against the defendant based almost solely on a glove found at a crime scene containing the defendant's DNA. Our supreme court observed that, "[l]ike a fingerprint, DNA is a marker of identity," and that "'[a] fingerprint found at the point of entry is accorded substantial weight because of its direct relationship to the element of illegal entry.'" *Id*. at 258 (quoting *Mediate v. State*, 498 N.E.2d 391, 394 (Ind. 1986)). But whereas a fingerprint on a door or a window can conclusively establish that a person was physically present at a crime scene, DNA on a portable object is much less probative of a person's physical presence at the scene. In fact, the court agreed with Meehan that "'DNA can be transferred to an item very easily,' thus making it possible that 'the glove found at the scene could have been left by any person who found, borrowed or stole it from [him],'" and that he "'could have very easily transferred his DNA to another person's glove at some point prior to the burglary by a casual touching.'" *Id*. at 259.

Yet the court affirmed Meehan's conviction, stating,

> Our precedent requires us to look at all the evidence presented in a light most favorable to the verdict. Given the presence of Meehan's DNA on the glove, Officer Gibbons's uncontroverted testimony that the glove was discovered only steps from the point of entry of a secured building, Meehan's lack of authorization to enter [the] building, and Meehan's possession of potential burglary tools [i.e., bolt cutters, a pocket knife, a screwdriver, a chisel, and two Allen key sets], we conclude that it was reasonable for the jury to infer that Meehan's DNA was on the glove because he was wearing it at the time of the burglary. In the process, the jury necessarily rejected alternative explanations for the presence of both Meehan's DNA and the glove.

4

*Id.* Given that approximately seven billion other persons also lacked authorization to enter the building and that the "potential burglary tools" were found in Meehan's possession while he was standing on a street corner over seven months after the burglary, we must conclude that under *Meehan*, the quantum of circumstantial evidence needed to affirm a criminal conviction in Indiana is extremely small indeed.

Before *Meehan*, we would have agreed with our dissenting colleague and reversed Willis's conviction for insufficient evidence. But "we are bound to follow the precedent of our supreme court." *Smith v. State*, 777 N.E.2d 32, 38 n.2 (Ind. Ct. App. 2002), *trans. denied* (2003). Unlike Meehan, Willis was observed running near the scene of the alleged crime shortly after a security alarm was activated and voices and noises were heard inside the Center. Another man was seen running in the opposite direction. Evidence of flight may be considered as circumstantial evidence of consciousness of guilt. *Clark v. State*, 6 N.E.3d 992, 999 (Ind. Ct. App. 2014).[2] Police also found a vandalized vending machine inside the Center and a vehicle with its doors and trunk open outside the Center. Officers apprehended Willis based on the description of Officer Clouse, who confirmed his identity. Based on the foregoing evidence and our supreme court's application of the sufficiency standard of review in *Meehan*, we conclude that a reasonable factfinder could infer that Willis was inside the Center and knowingly or intentionally interfered with the possession or use of its property

---

[2] Contrary to what the dissent suggests, we do not hold that Willis's flight is itself sufficient to support his conviction. Our affirmance is based on the totality of the circumstantial evidence favorable to the trial court's judgment, including Willis's and another fleeing man's proximity to the building shortly after the Center's alarm was activated and multiple voices and noises were heard, the presence of a vehicle with open doors and trunk behind the Center, and the vandalized vending machine.

without the owner's consent.  Willis's argument to the contrary is merely a request to reweigh the evidence, which we may not do.  Therefore, we affirm his criminal trespass conviction.

Affirmed.

BAKER, J., concurs.

BARNES, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

DRAKKAR R. WILLIS,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Appellant-Defendant,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀No. 49A02-1310-CR-854
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
STATE OF INDIANA,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Appellee-Plaintiff.⠀⠀⠀⠀⠀⠀)

**BARNES, Judge, dissenting**

I respectfully dissent. I am familiar with and have read the decision in Meehan v. State, 7 N.E.3d 255 (Ind. 2014). I do not believe that case demands or commands that the basic and longstanding tenets of the definition of "proof beyond a reasonable doubt" be altered. Others may disagree.

Some time ago, our supreme court stated:

> The rule of law defining proof beyond a reasonable doubt has been well settled for many years and requires each juror to be so convinced by the evidence that as a prudent man he would feel safe to act upon such conviction in matters of the highest concern and importance to his own dearest and most important interests, under circumstances where there was no compulsion or coercion upon him to act at all. The standard of a prudent man is that of a reasonable man. If different persons might reasonably arrive at different conclusions from that reached by the trial jury, the verdict will not be set aside for that reason. On the other hand if no reasonable man could find the evidence has proved an accused guilty beyond a reasonable doubt, a verdict

7

would not be sustained by sufficient evidence.

Baker v. State, 236 Ind. 55, 61, 138 N.E.2d 641, 644-45 (1956), overruled on other grounds by Davis v. State, 249 Ind. 373, 232 N.E.2d 867 (1968) (citations omitted).  Certainly, our review of the sufficiency of the evidence supporting a conviction is deferential.  But, more recently, our supreme court has observed:

> Although this standard of review is deferential, it is not impossible, nor can it be.  The Indiana Constitution guarantees "in all cases an absolute right to one appeal."  Ind. Const. art. VII, § 6.  An impossible standard of review under which appellate courts merely "rubber stamp" the fact finder's determinations, no matter how unreasonable, would raise serious constitutional concerns because it would make the right to an appeal illusory.

Galloway v. State, 938 N.E.2d 699, 709-10 (Ind. 2010).

A bit of review is in order.  An alarm sounds, police are dispatched.  While nearing the building from which the alarm emanated, an officer sees a black man running in a direction away from the building, approximately 100 yards in the distance.  This man was Willis, and he was convicted of trespass.  There is no evidence tying Willis to the scene.  No fingerprints were recovered on the vending machine or on any doors.  No footprints were found inside or outside the building.  No connection was made between Willis and the car police discovered outside the building with its doors and trunk open.

The entirety of the evidence upon which Willis was convicted was the fact that he was seen running at a distance of approximately 100 yards.  I am not convinced that this evidence can be construed as Willis's fleeing from the scene of the crime.  Even though we are bound to give the State a reasonable inference here, it is well-settled Indiana law that flight from a

8

crime scene, in and of itself, is <u>not</u> sufficient to sustain a conviction. <u>See</u> <u>Dill v. State</u>, 741 N.E.2d 1230, 1232-33 (Ind. 2001); <u>Banks v. State</u>, 257 Ind. 530, 538-39, 276 N.E.2d 155, 159 (1971); <u>Keaton v. State</u>, 177 Ind. App. 547, 548, 380 N.E.2d 587, 588 (1978). We are not in the business of horseshoes and hand grenades, where "close" is good enough. I am convinced the State has failed in its burden of proof and vote to reverse.