**Otis CHANDLER, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 980S377.

Supreme Court of Indiana.

April 20, 1981.

Patrick Brennan, Dennis M. Brennan, Brennan & Brennan, Professional Corporation, South Bend, for appellant (defendant below).

Linley E. Pearson, Atty. Gen. of Indiana, Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

HUNTER, Justice.

The defendant, Otis Chandler, was convicted by a jury of felony murder, Ind.Code § 35–42–1–1(2) (Burns 1979 Repl.), and was sentenced to fifty years' imprisonment. He now presents eight issues for review:

1. Whether the trial court erred in denying defendant's motion to dismiss and motion for mistrial based on several discovery violations by the state;

2. Whether the trial court erred when it failed to grant defendant's motion to suppress his confession;

3. Whether the trial court erred when it prevented the defendant from ascertaining the identity of a police informant;

4. Whether the trial court erred in restricting certain cross-examination of a prosecution witness;

5. Whether the trial court erred in permitting the victim's son to remain in the courtroom after he testified;

6. Whether the trial court erred when it allowed the state to introduce color slides of the deceased victim;

7. Whether the trial court erred in denying defendant's motion for a separate trial; and

8. Whether the trial court erred when it refused to give certain instructions tendered by defendant.

The evidence most favorable to the state reveals that in the afternoon of September 18, 1978, defendant and several others burglarized the residence of Telesfor Radomski in South Bend, Indiana, during the course of which Mr. Radomski was shot and killed.

## I.

About six months prior to trial, defendant made a discovery motion which was granted by the trial court. When trial commenced in January of 1980, it became apparent that the state had not fully complied with the court's discovery order. After several violations were revealed, defendant moved to have the charge against him dismissed, contending that he had been substantially prejudiced in the preparation of his case. In the alternative, a mistrial was requested. The trial court denied the motions, and defendant assigns this ruling as error.

■ In *Carson. v. State*, (1979) Ind., 391 N.E.2d 600, 602, this Court stated:

"When the State violates a proper discovery order, a trial court has wide discretion to remedy the transgression.

" 'Obviously, the trial judge is usually in the best position to determine what harm, if any, evolved from a violation, whether or not such harm can be eliminated or satisfactorily alleviated and the dictates of fundamental fairness. Absent clear error in his decision it should not be overturned.' *Reid v. State* (1978) Ind., 372 N.E.2d 1149, 1155." *Accord, O'Conner v. State*, (1980) Ind., 399 N.E.2d 364.

Furthermore, it is well settled that the granting of a mistrial lies largely within the sound discretion of the trial court and is only proper where, under all the circumstances, the defendant has been placed in a position of grave peril to which he should not have been subjected. *Tinnin v. State*, (1981) Ind., 416 N.E.2d 116; *Schmanski v. State*, (1979) Ind., 385 N.E.2d 1122.

■ We will now proceed to examine the specific instances of discovery violations. On the second day of trial during direct examination of one of its witnesses, the state attempted to introduce some photographs of the decedent's body and the murder scene which defense counsel claimed had not been given to him contrary to the discovery order. Over defendant's objection, the photographs were admitted into evidence. First, we note that defendant made no motion for a continuance in order to fully examine the photographs. Also, defense counsel admitted in open court that he had been informed by the state that some pictures had been taken and that he had not taken advantage of the state's invitation to visit the prosecutor's office to make sure that discovery had been completed.

While it may still be arguable whether or not the state's actions constitute minimal compliance with the discovery order, defendant has not demonstrated to this Court, in any event, how he was substantially harmed. He has made no showing that the existence of these photographs necessitated any trial preparation beyond what he already knew he had to do. *Crosson v. State*, (1978) 268 Ind. 511, 376 N.E.2d 1136.

Later that same day, the state called the evidence technician from the South Bend Police Department's homicide unit who testified that he had sent some cards containing the rolled and flat impressions of defendant's fingerprints to the FBI in Washington, D. C. for comparative analysis with some latent prints discovered at the murder scene. He could not recall the date that he had mailed the cards, and the state sought to refresh his memory with a transmittal receipt. Defense counsel objected for the reason that the receipt had not been given to him in violation of the discovery order. The objection was summarily overruled.

Assuming the receipt was even covered by the discovery order, defendant has made no argument whatsoever as to how he was harmed by the failure to disclose. He has made no showing that he lacked knowledge of the mailing date or how that information was relevant to the preparation of his defense.

Besides granting the defendant's discovery motion, the trial court had also ordered the state to transcribe all grand jury minutes and make them available to defense counsel. On the first day of trial, it was discovered that not all of the grand jury minutes had been transcribed and been made available. The trial court ordered that it be done immediately. In the afternoon of the second day of trial, defense counsel objected to the testimony of state's witness Artie Lamar James on the basis that over the lunch hour, he had first been given the grand jury minutes containing James's testimony and therefore did not have sufficient time to review them for effective cross-examination.

It was also brought out at this time that defense counsel had been trying to locate Mr. James prior to trial but had been unable to get an address from the state. Due to a breakdown in communications in the prosecutor's office, the prosecuting attorneys in defendant's case did not learn of the address until five days before trial and did not convey that information to defense counsel. At this point, the trial court asked defense counsel what he wanted and coun-

sel requested that there be an adjournment until the next morning in order to give him more time to talk to James. The court granted that request and ordered that James be made available for an interview that evening outside the presence of the prosecutor.

■ When trial reconvened the next morning, defendant did not allege that his meeting with James had been insufficient for purposes of preparing him for trial. In fact, the record reveals an extensive cross-examination of James by defendant's attorney. Moreover, the trial court granted the specific relief requested by defense counsel. When the state has violated the trial court's order for discovery, a continuance is the most appropriate remedy unless the state's action is so misleading or demonstrates such bad faith that the only way to avoid a denial of the defendant's fair trial rights is to exclude the state's evidence. *O'Conner v. State, supra; Carson v. State, supra.*

On the morning of the third day of trial, defense counsel informed the court of additional discovery violations by the state. He stated that the previous evening, the attorney for Artie James had given him a police report prepared by Officer Charles Mahank which had never been delivered to him by the state. That report disclosed that the grand jury had convened a *second* time. Defense counsel said that he had not been given a transcription of that hearing. In addition, defendant's attorney told the court that that morning, the prosecutor gave him another police report prepared by Officer Mahank which he had not seen before. It was at this stage of the proceeding that defense counsel made the motion to dismiss and the motion for mistrial.

The prosecutor informed the court that a transcript of the second grand jury meeting had just been given to him, and a copy was then turned over to the defense. The only person testifying at this second hearing was Officer Mahank. He did not testify at trial until the next day, the fourth day of trial. Therefore, defendant was able to review the transcript overnight prior to cross-examining Officer Mahank the following day.

Defendant did not move for a continuance when it came time to cross-examine the witness, and a lengthy and extensive cross-examination was conducted. Defendant has made no showing on appeal how he was prejudiced by the late disclosure of these grand jury minutes.

As for the police reports, defendant has not even attempted to explain how he was prejudiced. He merely states that they represent further examples of the state's violation of the pretrial discovery order.

One report was an investigation report, most of which was comprised of statements made to the police by defendant and Artie James. Defendant has not demonstrated that these statements contained facts that he did not already know. Indeed, the content of defendant's statements closely parallels his written confession made to police, and there is no contention that defense counsel had not been given a copy of that. The other report was merely an arrest report of one of defendant's codefendants. It contains nothing of substance as to the events surrounding the commission of the crime.

■ This Court should not be understood as approving the manner in which the state conducted discovery in this case. We fully understand the trial court's expression of displeasure when it stated:

"I might tell the Prosecution that the Court is on a short fuse with respect to the record shown by the State's cooperation with reference to the duties under discovery and you are not far from a motion to dismiss for failure to abide in principle with the philosophy of the discovery procedures in this matter."

As Judge Staton observed in *Upshaw v. State,* (1976) 170 Ind.App. 206, 211, 352 N.E.2d 102, 105:

"[T]he purpose of pretrial discovery is to promote justice and to prevent surprise by allowing the defense adequate time to prepare its case."

The trial court in this case took into consideration the harm suffered by defendant as a result of the state's conduct as evidenced by this passage:

"Motion for mistrial or dismissal based on what might be generously termed or sympathetically termed as at least apparent recalcitrance by the State is denied sort of hesitantly. We feel the Prosecution for whatever reasons has not complied in as good faith as has ordinarily been the practice of the Prosecution but I do not think has reached the point that has prevented the defendants from having a fair trial or marshalling the defense of these causes so that also is denied, motion for mistrial and motion to dismiss."

We do not believe that there is clear error in the trial court's discretionary decision to deny defendant's motion to dismiss and motion for mistrial.

## II.

Defendant next contends that the trial court erred in denying his motion to suppress his written confession. He claims that he was under the influence of marijuana and alcohol at the time he made the statement, that he was not adequately informed of his rights, and that he did not understand the significance of the waiver he had signed.

 It is the state's burden to prove, beyond a reasonable doubt, that the defendant voluntarily and intelligently waived his rights, and that the defendant's confession was voluntarily given. *Shepler v. State*, (1980) Ind., 412 N.E.2d 62; *Jackson v. State*, (1980) Ind., 411 N.E.2d 609. Upon a review of the denial of a motion to suppress a confession and the subsequent admission of that confession over objection, this Court will not weigh the evidence or judge the credibility of witnesses. The admissibility of a confession ultimately depends upon questions of fact which are to be resolved by the trial court. If the evidence is conflicting, only that evidence which tends to support the trial court's ruling will be considered on appeal. If the trial court's ruling is supported by substantial evidence of probative value, it will not be disturbed. *Fleener v. State*, (1980) Ind., 412 N.E.2d 778; *Wollam v. State*, (1978) 269 Ind. 286, 380 N.E.2d 82.

 At the time of the confession, defendant was a juvenile. In *Lewis v. State*, (1972) 259 Ind. 431, 288 N.E.2d 138, this Court determined the appropriate standard to be employed in such a case:

"We hold therefore that a juvenile's statement or confession cannot be used against him at a subsequent trial or hearing unless both he and his parents or guardian were informed of his rights to an attorney, and to remain silent. Furthermore, the child must be given an opportunity to consult with his parents, guardian or an attorney representing the juvenile as to whether or not he wishes to waive those rights. After such consultation the child may waive his rights if he so chooses provided of course that there are no elements of coercion, force or inducement present." *Id.* at 439, 288 N.E.2d at 142. *Accord, Hall v. State*, (1976) 264 Ind. 448, 346 N.E.2d 584.

Contrary to defendant's contentions, Officer Mahank testified that he read to defendant and his mother his constitutional rights to remain silent and to have an attorney present. Officer Mahank stated that he asked both defendant and his mother whether they understood those rights, and they said that they did. In addition, Officer Mahank testified that defendant did not appear to be under the influence of drugs or alcohol and that defendant and his mother were permitted to consult together in a room by themselves for approximately ten minutes before defendant agreed to sign the waiver and make the statement. There is no evidence of coercion, force, or inducement. Therefore, there was no error in denying defendant's motion to suppress.

## III.

During cross-examination of Officer Mahank, defendant's attorney asked if the witness had talked to a Captain Smith about the case and Officer Mahank replied that he had received a report from him. Defense counsel then asked if Captain Smith had received some information from an informant about the case, and the witness replied in the affirmative, stating that he had

also met with the informant. Defense counsel requested the identity of the informant whereupon the state objected, and the court sustained the objection. Defendant maintains that the trial court's ruling was erroneous because it was important for him to test the reliability of the informant.

■ It is well settled that the general policy in this state is to prevent the disclosure of an informant's identity unless such disclosure is relevant and helpful to the defense or is necessary for a fair trial. *Craig v. State*, (1980) Ind., 404 N.E.2d 580; *McCulley v. State*, (1971) 257 Ind. 135, 272 N.E.2d 613. Since the state has the privilege to withhold the identity of an informant, the burden is upon defendant to demonstrate an exception. *Craig v. State, supra; Lewandowski v. State*, (1979) Ind., 389 N.E.2d 706.

■ Here, the defendant has clearly not satisfied this burden. There has been no showing whatsoever that disclosure of the informant's identity would have been relevant and helpful to the defense or necessary to a fair trial. There is simply no indication what role the informant played in the investigation and prosecution of this case. Accordingly, there was no error in sustaining the state's objection.

### IV.

■ Also during cross-examination of Officer Mahank, defense counsel attempted to determine whether the witness had withheld evidence in a previous criminal prosecution, but he was prevented from doing so when the trial court sustained the state's objection. Defendant made an offer to prove that the witness would testify that in the case of *Arline v. State*, (1973) 156 Ind. App. 95, 294 N.E.2d 840, he withheld a certain weapon from the defense and had lied under oath. Defendant contends that this line of questioning was proper cross-examination in that it had a bearing on the present credibility of the witness.

A reading of *Arline* does not support defendant's contention. The opinion reveals that the police in that case gave the prosecutor a knife, prior to trial, which was allegedly involved in the crime and that it was the *prosecutor* who intentionally withheld it from the defense. Officer Mahank had been asked during the trial in *Arline* whether he had found such a knife in the course of his investigation, and he replied in the negative. Defendant's assertion that this was perjured testimony is pure speculation and finds no support in the *Arline* opinion. The trial court committed no error in restricting defense counsel's cross-examination.

### V.

■ Defendant next maintains that the trial court erred in permitting a prosecution witness, the victim's son, to remain in the courtroom after he had testified. At the beginning of trial, the court granted a defense motion for the separation of witnesses in which they were ordered to remain outside the courtroom until they were called to testify.

After the victim's son testified, he requested that the court permit him to remain inside the courtroom and observe. Over defendant's objection, the trial court granted the request upon determining that the son would not be used as a witness again. Defendant does not contend that the presence of the son in the courtroom violated the separation order, but he does argue that the son's presence "distracted and aroused the emotions of the jury so as to prejudice [his] right to a fair and impartial proceeding."

Defendant has cited nothing in the record to substantiate his claim. Whether or not to allow the son to remain in the courtroom was a matter within the discretion of the trial court, and this Court will not interfere except for an abuse thereof. *Dixon v. State*, (1976) 264 Ind. 651, 348 N.E.2d 401. Without a showing that defendant's right to a fair trial and an impartial jury was in any way prejudiced or violated, we cannot find an abuse of discretion. *DeBoor v. State*, (1962) 243 Ind. 87, 182 N.E.2d 250. There was no error here.

## VI.

Defendant next alleges that the trial court erred when it allowed the state to introduce, over his objection, two exhibits by way of color slides projected onto a movie screen. The pictures portrayed the body of the deceased victim prior to the autopsy. Defendant argues that the proper way to have admitted the exhibits would have been to distribute them as photographs to each juror. He contends that the color slides unduly inflamed the passions of the jury.

The fact that a photograph might arouse the jury is not a sufficient ground in itself to justify its exclusion as long as the evidence is relevant and material. *Porter v. State*, (1979) Ind., 391 N.E.2d 801; *Quinn v. State*, (1976) 265 Ind. 545, 356 N.E.2d 1186. Defendant does not explain and we fail to see how the slides inflamed the passions of the jury any more than color photographs would have. Since defendant has conceded the admissibility of the exhibits as photographs, his argument has no merit.

## VII.

Defendant was tried jointly with two other defendants. He moved for a separate trial, but it was denied by the trial court. Defendant assigns this ruling as error.

The decision to grant or deny a motion for separate trial is within the sound discretion of the trial court. *Taggart v. State*, (1979) Ind., 390 N.E.2d 657; *Gutierrez v. State*, (1979) Ind., 386 N.E.2d 1207. Defendant must show on appeal that in light of what actually occurred at trial, the denial of a separate trial subjected him to such prejudice that the trial court may be said to have abused its discretion in refusing to grant his motion for severance. *Gutierrez v. State*, (1979) Ind., 395 N.E.2d 218; *Ortiz v. State*, (1976) 265 Ind. 549, 356 N.E.2d 1188.

Defendant first asserts that by being subjected to a joint trial, he was found guilty by association. While conceding that one defendant was found innocent, he maintains that the jury would not believe that the police could be wrong three times so that they were bound to find at least one of the defendants guilty. Second, he contends that his counsel was forced to be less aggressive in the joint trial. He cites no specific examples. Defendant's contentions are mere conclusions without support in the record. Prejudice having been asserted but not demonstrated, the trial court did not err in denying severance. *White v. State*, (1975) 263 Ind. 302, 330 N.E.2d 84.

## VIII.

Defendant's final specification of error is that the trial court erred in refusing to give eight of his tendered instructions. However, with one exception, defendant has failed to support his allegations with cogent argument and appropriate legal authority as required by Ind.R.App.P. 8.3(A)(7). These issues are, therefore, waived. *Abrams v. State*, (1980) Ind., 403 N.E.2d 345; *Carman v. State*, (1979) Ind., 396 N.E.2d 344.

The remaining issue properly preserved for review concerns defendant's tendered instruction number three which reads:

> "An accomplice who turns 'State's Evidence' and agrees to 'cooperate' with the State in consideration of lenience or the dismissal of charges, to be realistic, is being bribed regardless of facts that public policy has approved such action in the interest of effective law enforcement and, therefore, such accomplice's testimony, though not necessarily false, is highly suspect and should be highly scrutinized by the jury."

This instruction apparently refers to state's witness Artie Lamar James, another participant in the offense who was not tried with defendant and his two codefendants.

The substance of defendant's tendered instruction was taken from an observation made by this Court in *Newman v. State*, (1975) 263 Ind. 569, 334 N.E.2d 684. However, in that case, we made the remark in the course of explaining why we were ordering a new trial when the prosecutor failed to disclose to the jury an agreement

of leniency between the state and an accomplice who testified for the state. This Court did not hold that an instruction embodying that language would have been proper.

Even assuming that there was some sort of an agreement between the state and Artie James, and defendant has made no showing that such an agreement existed, this Court has consistently held that a cautionary instruction concerning the credibility of accomplice testimony is erroneous as an invasion of the province of the jury. *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411; *Cherry v. State*, (1972) 258 Ind. 298, 280 N.E.2d 818; *Turner v. State*, (1972) 258 Ind. 267, 280 N.E.2d 621. There was no error in refusing defendant's instruction number three.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.